UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF INDIANA
HAMMOND DIVISION

| | |
|---|---|
| REGINALD BROOKS, <br><br> Plaintiff, <br><br> v. <br><br> I. SMITH, et al., <br><br> Defendants. | CAUSE NO. 2:25-CV-476-HAB-ALT |

OPINION AND ORDER

Reginald Brooks, a prisoner without a lawyer, filed a complaint alleging the defendants in this case violated his Fourth Amendment rights when two Allen County Jail officers used facial recognition technology to scan his face when he did not consent to the scans. ECF 1. He also alleges that the defendants violated his rights by placing him on twenty-four hour lockdown for refusing to submit to facial scans. *Id*. "A document filed *pro se* is to be liberally construed, and a *pro se* complaint, however inartfully pleaded, must be held to less stringent standards than formal pleadings drafted by lawyers." *Erickson v. Pardus*, 551 U.S. 89, 94 (2007) (quotation marks and citations omitted). Nevertheless, under 28 U.S.C. § 1915A, the court must review the merits of a prisoner complaint and dismiss it if the action is frivolous or malicious, fails to state a claim upon which relief may be granted, or seeks monetary relief against a defendant who is immune from such relief.

Brooks alleges that from September 27, 2025, to October 9, 2025, Allen County Jail officers repeatedly sought to scan his facial features so that they could be added to

the jail's Artificial Intelligence Facial Recognition Program. ECF 1 at 3-6. On September 27, Officer I. Smith initially went to Brooks's cell to scan his facial features, but Brooks refused the scan. *Id.* at 3. Instead, Brooks held out his wrist band, which has his photo, date of birth, and prisoner number on it, and told Officer Smith to manually enter the information into the system. *Id*. Officer Smith said he could not do that and told Brooks that Cpl. Sherwood had instructed him to place any inmate who refused a facial scan on twenty-four hour lockdown. *Id.* at 3, 5. Officer Smith then placed Brooks on lockdown. *Id*. at 3. Later that day, when Officer Smith returned to Brooks's cell, he again refused Officer Smith's request for a facial scan. *Id*.

The following day, on September 28, 2025, Officer Smith went to Brooks's cell, but Brooks again refused to have his face scanned and was placed on twenty-four hour lockdown. *Id*. Brooks asserts Cpl. Sherwood approved the lockdown. *Id*. at 5. Toward the end of his shift, Officer Smith returned to Brooks's cell and, while Brooks had his back turned to Officer Smith and stated he would not consent to a facial scan, Officer Smith walked around to the front of Brooks and secretly scanned his face. *Id*. at 3. After the scan, Officer Smith said to Brooks, "Now I still got you." *Id*.

Later, on September 28, 2025, Officer B. West, who worked on the second shift, entered Brooks's cell to take a facial scan, but Brooks would not consent to the scan. *Id*. at 4. He held out his wrist band and told Officer West to manually enter his information into the jail's system. *Id*. However, Officer West said he could not do that and placed Brooks on twenty-four hour lockdown. *Id*. Officer West then stepped out of the cell and manually logged Brooks's information into the jail's system. *Id*. Brooks asserts an

2

unknown Shift Commander instructed Officer West to put any inmate who refused to submit to a facial scan on twenty-four hour lockdown. *Id*. at 5.

On September 30, 2025, Officer Nichols went to Brooks's cell to obtain a facial scan, but Brooks refused to consent to the scan. *Id*. at 4. Officer Nichols told Brooks the Shift Commander instructed him to place inmates who refused a scan on twenty-four hour lockdown. *Id*. at 4, 5. Brooks held out his wrist band and told Officer Nichols to ask the Shift Commander to come Brooks's cell and relay that information to him. *Id*. at 4. Officer Nichols then placed Brooks on twenty-four hour lockdown for refusing to submit to a facial scan. *Id*.

On October 1, 2025, Officer Smith went to Brooks's cell and manually entered Brooks's information in the jail's system because he refused a facial scan. *Id*. at 3. At the end of Officer's Smith's shift, he again asked Brooks to submit to a facial scan, but Brooks refused and held out his wrist band. *Id*. at 3-4. Officer Smith then placed Brooks on twenty-four hour lockdown. *Id*. at 4. Brooks asserts an unknown Shift Commander instructed Officer Smith to put any inmate who refused a facial scan on twenty-four hour lockdown. *Id*. at 5.

Three days later, on October 4, 2025, Officer Nichols went to Brooks's cell to obtain a facial scan. *Id*. at 4. Brooks refused to consent to the scan and held out his wrist band to have his information manually entered in the jail's system. *Id*. Officer Nichols placed Brooks on twenty-four hour lockdown because an unknown Shift Commander had instructed Officer Nichols to lockdown any inmate who refused to a facial scan. *Id*. at 5.

3

On October 5, 2025, during roll call, Officer Nichols returned to Brooks's cell. *Id*. at 4. He had a sheet of paper containing each inmate's name, prisoner number, and cell and block numbers. *Id*. Officer Nichols checked Brooks's name off on his sheet of paper and left his cell. *Id*.

Three days later, on October 8, 2025, when dinner meals were being passed out, Officer Manley asked Brooks to submit to a facial scan. *Id*. at 4-5. Brooks refused the scan and turned his head away from Officer Manley. *Id*. However, Officer Manley was still able to scan Brooks's face and stated to Brooks "I got it any way." *Id*. at 5.

The following day, on October 9, 2025, Brooks asserts Commanding Officer Caldwell[1] entered his cell, scanned his cellmate's face, and then exited the cell. *Id*. at 6. Commanding Officer Caldwell later placed Brooks on twenty-four hour lockdown and told him that his actions were causing other inmates to refuse facial scans. *Id*.

In this case, Brooks seeks both preliminary and permanent injunctions to prohibit the defendants from continuing to use facial recognition technology to scan his facial biometrics. ECF 1 at 7, ECF 6. He also requests that his facial biometrics be removed from the jail's system. Brooks further seeks $270,000 in monetary damages from each defendant for scanning his face without his consent and punishing him by placing him on twenty-four hour lockdown.

---

[1] Brooks has not named Commanding Officer Caldwell as a defendant in this case.

4

*<u>Brooks's Fourth Amendment Claims</u>*

Brooks first asserts that Officer Smith and Officer Manley violated his rights under the Fourth Amendment when they used facial recognition technology to scan his face without his consent. ECF 1 at 3-5. He asserts their use of this technology constituted an unreasonable search. *Id*.

"The touchstone of the Fourth Amendment analysis is whether a person has a constitutionally protected reasonable expectation of privacy." *Henry v. Hulett*, 969 F.3d 769, 776–77 (7th Cir. 2020). "The Fourth Amendment does not protect every subjective expectation of privacy, but those expectations that society is prepared to recognize as reasonable." *Id.* "As a pretrial detainee, Brooks retains his Fourth Amendment rights against unreasonable searches and seizures. *Brown v. Polk Cnty.*, 965 F.3d 534, 537–38 (7th Cir. 2020). But the fact of his detention impacts what searches are reasonable under the Fourth Amendment. *Id.* Reasonableness is evaluated by "balancing 'the need for the particular search against the invasion of personal rights that the search entails.'" *Id.* at 538 (quoting *Bell v. Wolfish*, 441 U.S. 520, 559 (1979)). Relevant factors are "the scope of the particular intrusion, the manner in which it is conducted, the justification for initiating it, and the place in which it is conducted." *Id.* (quoting *Bell*, 441 U.S. at 559).

As an initial matter, there is no controlling caselaw holding that a correctional officer violates a pretrial detainee's Fourth Amendment right against unreasonable searches by using facial recognition technology for the purpose of managing inmates and security at a jail. However, an application of the factors described in *Brown* leads this court to conclude that the scans described by Brooks do not violate the Fourth

5

Amendment. Here, Brooks alleges that the facial scans were conducted at the Allen County Jail for the purpose of identifying inmates during daily roll calls. The two scans he describes were short in duration, likely only a few seconds. Brooks does not allege the scans were intrusive and he knew the facial recognition technology was being used as a security measure to identify and account for the inmates at the jail. *Bell*, 441 U.S. at 547 ("Prison administrators . . . should be accorded wide-ranging deference in the adoption and execution of policies and practices that in their judgment are needed to preserve internal order and discipline and to maintain institutional security.").

While not directly on point, the case of *Alicea v. County of Cook*, 88 F. 4th 1209 (7th Cir. 2023) is instructive. In *Alicea*, the United States Court of Appeals for the Seventh Circuit considered whether the use of cameras to record holding cell toilets in courthouses in Cook County, Illinois violated the Fourth Amendment privacy interests of pretrial detainees. The Court of Appeals held that pretrial detainees did not have a reasonable expectation of privacy when using holding cell toilets and found their privacy rights were substantially diminished. The Court of Appeals also acknowledged that the use of cameras was reasonable given the security risks. Here, the officers' use of facial recognition technology was far less intrusive than the use of cameras to record pretrial detainees in courtroom holding cell toilets.

It has also long been accepted that fingerprinting pre-trial detainees does not violate the Fourth Amendment. *See Maryland v. King*, 569 U.S. 435, 458, 133 S. Ct. 1958, 1976, 186 L. Ed. 2d 1 (2013) ("In the seminal case of *United States v. Kelly,* 55 F.2d 67 (C.A.2 1932), Judge Augustus Hand wrote that routine fingerprinting did not violate the

6

Fourth Amendment precisely because it fit within the accepted means of processing an arrestee into custody[.]"). The Supreme Court has likewise found that DNA collection by buccal swab for the purposes of identification does not violate the Fourth Amendment. "The additional intrusion upon the arrestee's privacy beyond that associated with fingerprinting is not significant[.]" *Id.* at 459. The same can be said of the biometric scans described by Brooks. Therefore, given the brief and non-intrusive nature of Brooks's two facial scans coupled with security concerns inherent in managing an inmate population, the court concludes the facial scans did not constitute unreasonable searches.

However, even if the defendants did violate Brooks's Fourth Amendment rights against unreasonable searches, to the extent that Brooks is seeking monetary damages, the defendants are entitled to qualified immunity. "Qualified immunity protects government officials from civil liability when performing discretionary functions so long as their conduct does not violate clearly established statutory or constitutional rights of which a reasonable person would have known." *Alvarado v. Litscher*, 267 F.3d 648, 652 (7th Cir. 2001) (internal quotation marks and citation omitted). To overcome a qualified immunity defense, "a plaintiff must show the deprivation of a constitutional right, and must also show that the right was clearly established at the time of the violation." *Walker v. Benjamin*, 293 F.3d 1030, 1037 (7th Cir. 2002) (citing *Alvarado*, 267 F.3d at 652). To show that a right is clearly established, the burden is on the plaintiff to "demonstrate that existing caselaw at the time of the events in question 'placed the statutory or constitutional question beyond debate.'" *Dockery v. Blackburn*, 911 F.3d 458,

466 (7th Cir. 2018). A violation is only clearly established where: (1) a closely analogous case establishes that the conduct is unconstitutional; or (2) the violation is so obvious that a reasonable state actor would know that his actions violated the Constitution. *Siebert v. Severino*, 256 F.3d 648, 654–55 (7th Cir. 2001). "[A] defendant cannot be said to have violated a clearly established right unless the right's contours were sufficiently definite that any reasonable official in the defendant's shoes would have understood that he was violating it." *Plumhoff v. Rickard*, 572 U.S. 765, 778–79 (2014). Because there is no controlling caselaw that holds that the circumstances described by Brooks amounted to a Fourth Amendment violation, the defendants are entitled to qualified immunity.

### *Brooks's Due Process Claims*

Brooks next asserts that the defendants violated his rights when they placed him on twenty-four hour lockdown after he refused to submit to facial scans. The Fourteenth Amendment provides state officials shall not "deprive any person of life, liberty, or property, without due process of law . . .." U.S. Const. amend. XIV, § 1. Under the Fourteenth Amendment, a pre-trial detainee cannot be punished without due process of law. *Bell v. Wolfish*, 441 U.S. 520 (1979).

A convicted prisoner has no liberty interest in avoiding segregation unless it amounts to a "significant and atypical hardship" in relation to the ordinary incidents of prison life. *Sandin v. Conner*, 515 U.S. 472, 476 (1995); *see also Johnson v. Murray*, No. 23-1805, 2024 WL 208152, at *1 (7th Cir. Jan. 19, 2024) (discussing different due process requirements to discipline a pretrial detainee as compared to a convicted prisoner). "A

8

pretrial detainee cannot be placed in segregation as a punishment for a disciplinary infraction without notice and an opportunity to be heard; due process requires no less." *Higgs v. Carver*, 286 F.3d 437, 438 (7th Cir. 2002). "[D]ue process requires that he receive advance written notice of the charges, the chance to present testimony and documentary evidence to an impartial decisionmaker, and a written explanation, supported by at least 'some evidence' in the record, for any disciplinary action taken." *Lagerstrom v. Kingston*, 463 F.3d 621, 624 (7th Cir. 2006). Giving Brooks the inferences he is entitled to at this stage of the proceedings, he has stated claims against Officer I. Smith, Officer B. West, Officer I. Nichols, Cpl. Sherwood, Unknown Shift Commander, Unknown Shift Commander, and Officer Manley under the Fourteenth Amendment for depriving him of due process.

However, Brooks will be limited to seeking nominal and punitive damages for any proven due process violation. He does not allege that being in lockdown caused him any physical injury, so the Prisoner Litigation Reform Act does not allow him to recover compensatory damages. *See Thomas v. Illinois*, 697 F.3d 612, 614 (7th Cir. 2012) ("Because 'no Federal civil action may be brought by a prisoner confined in a jail, prison, or other correctional facility, for mental or emotional injury suffered while in custody without a prior showing of physical injury,' 42 U.S.C. § 1997e(e), a prisoner cannot obtain compensatory damages without proving a physical injury."). Thus, Brooks's potential recovery is limited to one dollar, *see Carey v. Piphus*, 435 U.S. 247, 267 (1978) (defining nominal damages as damages "not to exceed one dollar"), plus punitive damages if he can show "the defendant's conduct is . . . motivated by evil

9

motive or intent, or . . . it involves reckless or callous indifference to the federally protected rights of others," *Smith v. Wade*, 461 U.S. 30, 56 (1983).

### *Brooks's Motion for Preliminary Injunction*

Furthermore, Brooks has filed a motion for a preliminary injunction. ECF 6. "[A] preliminary injunction is an extraordinary and drastic remedy, one that should not be granted unless the movant, *by a clear showing*, carries the burden of persuasion." *Mazurek v. Armstrong*, 520 U.S. 968, 972 (1997) (emphasis in original). "A plaintiff seeking a preliminary injunction must establish that he is likely to succeed on the merits, that he is likely to suffer irreparable harm in the absence of preliminary relief, that the balance of equities tips in his favor, and that an injunction is in the public interest." *Winter v. Nat. Res. Def. Council, Inc.*, 555 U.S. 7, 20 (2008). Because Brooks has not been granted leave to proceed on any claim for injunctive relief, the relief he seeks falls outside the scope of the claims he is proceeding on. Therefore, Brooks's motion for a preliminary injunction must be denied.

### *Brooks's Motions to Amend*

As a final matter, Brooks has filed three motions to amend his original complaint. ECF 4, 5, 7. He seeks to add nineteen new defendants asserting essentially the same claims as he set forth in his complaint, but which occurred from October 11, 2025, to November 20, 2025. *Id*. A plaintiff may amend his complaint once as a matter of course at this stage without the court's approval. Fed. R. Civ. P. 15(a). Therefore, Brooks does

not need leave of court to file an amended complaint at this time. However, Northern District of Indiana Local Rule 15-1 requires Brooks to amend his complaint by "reproduc[ing] the entire pleading as amended" and prohibits "incorporat[ing] another pleading by reference." Brooks has not tendered an amended complaint containing all of his claims against all of the defendants he wishes to sue. Therefore, the motions will be denied.

For these reasons, the court:

(1) DENIES the motion for a preliminary injunction (ECF 6);

(2) DENIES the motions to amend complaint (ECF 4, 5, and 7);

(3) GRANTS Reginald Brooks leave to proceed against Officer I. Smith, Officer B. West, Officer I. Nichols, Cpl. Sherwood, Unknown Shift Commander, Unknown Shift Commander, and Officer Manley in their individual capacities for nominal and punitive damages for depriving him of due process when they placed him on twenty-four hour lockdowns, in violation of the Fourteenth Amendment;

(4) DISMISSES all other claims;

(5) DIRECTS the clerk to add the Sheriff of Allen County in his official capacity as a defendant only for the purpose of identifying the Unknown Shift Commanders;

(6) ORDERS the Sheriff of Allen County to appear and identify the Unknown Shift Commanders who ordered Reginald Brooks to be placed on twenty-four hour lockdown on September 28, 2025, October 1, 2025, and October 4, 2025, by **January 19, 2026**, or show cause why he is unable to do so;

(7) WAIVES the Sheriff of Allen County's obligation to file an answer to the complaint;

(8) DIRECTS the clerk, under 28 U.S.C. § 1915(d), to request Waiver of Service from (and if necessary, the United States Marshals Service to use any lawful means to locate and serve process on) Officer I. Smith, Officer B. West, Officer I. Nichols, Cpl. Sherwood, Officer Manley, and the Sheriff of Allen County at the Allen County Sheriff's Department, with a copy of this order and the complaint (ECF 1);

(9) ORDERS Allen County Sheriff's Department to provide the full name, date of birth, and last known home address of any defendant who does not waive service if it has such information; and

(10) ORDERS, under 42 U.S.C. § 1997e(g)(2), Officer I. Smith, Officer B. West, Officer I. Nichols, Cpl. Sherwood, and Officer Manley to respond, as provided for in the Federal Rules of Civil Procedure and N.D. Ind. L.R. 10-1(b), only to the claims for which the plaintiff has been granted leave to proceed in this screening order.

SO ORDERED on December 22, 2025.

s/ Holly A. Brady
CHIEF JUDGE HOLLY A. BRADY
UNITED STATES DISTRICT COURT